IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ELIZABETH ADAM and REBECCA FOLEY, *individually and on behalf of all others similarly situated*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) 1:20cv520 |
| AQ TEXTILES LLC, and CREATIVE TEXTILE MILLS PVT. LTD., | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs bring this action under federal and state law alleging that Defendants have "deceive[d] and [misled] consumers into believing that Defendants' bedding and linen products had higher thread counts than they really have." (ECF No. 1 ¶ 1.) Plaintiffs seek relief on behalf of themselves and on behalf of putative classes who are similarly situated. (*Id.* at 1.) Before the Court is a motion filed by Defendant AQ Textiles LLC ("AQ Textiles") to dismiss Plaintiffs' six counts pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 9.) For the reasons set forth below, the Court finds that Plaintiffs lack standing under Article III, § 2 of the U.S. Constitution, and therefore the Court lacks jurisdiction to proceed with this case. Accordingly, Defendants' motion to dismiss under Rule 12(b)(6) and 12(b)(1) will be denied as moot and Plaintiffs' Complaint will be dismissed.

**I.      BACKGROUND**

Plaintiffs Elizabeth Adam and Rebecca Foley purchased bed linens labeled as having thread counts of 700 or more from T.J. Maxx retail stores in Massachusetts. (ECF No. 1 ¶¶ 32, 36.) Plaintiffs allege, however, that these sheets, "imported by Defendant AQ Textiles," had "true thread count[s]" of 245 and 230, respectively. (*Id.* ¶¶ 80–82.) They contend that Defendants ignored the "well-established and long-standing industry standards governing the calculation and advertisement of thread counts," (*id.* ¶ 5), and instead are systematically doubling or tripling "the true thread count" by counting plied yarns not as a single thread but as the number of intertwined strands from which they are comprised, (*id.* ¶ 66). According to Plaintiffs, this practice has "created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways." (*Id.* ¶ 68.)

Plaintiffs further allege that they have personally been injured because the bed linens at issue "are of lower quality, softness, comfort, durability, and longevity than they otherwise would [be] if they were the represented thread count and quality as stated on the labeling and price tags." (*Id.* ¶ 75.) Moreover, they claim that these sheets are "inherently defective and not fit for their intended use as high quality luxury sheets and bedding." (*Id.*) Plaintiffs, citing these alleged "deceptive acts and unconscionable business practices," (*id.* ¶ 1), bring six counts against Defendants under federal and state law: (1) violation of the Magunson Moss Warranty Act, 15 U.S.C. § 2301–12; (2) breach of implied warranty of merchantability under Massachusetts's Uniform Commercial Code, Mass. Gen. L. ch. 106 § 2-314; (3) breach of an express warranty; (4) negligent misrepresentation; (5) violation of Massachusetts's Consumer

Protection Law, Mass. Gen. L. ch. 93A; and (6) unjust enrichment, (*id.* ¶¶ 113–87). Plaintiffs' Complaint requests that the Court certify two classes of plaintiffs, grant permanent injunctive relief, and award compensatory and exemplary damages. (*Id.* at 29.)

## II. DISCUSSION

As a threshold matter before addressing the merits of Defendants' motion to dismiss, the Court will first consider Article III standing. Though neither party has raised this issue, "federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citation and internal quotations omitted) (alteration in original); *see also Juidice v. Vail*, 430 U.S. 327, 331 (1977).

The requirement for a plaintiff to have standing "ensure[s] that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish constitutional standing at the motion to dismiss stage, Plaintiffs must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, [Plaintiffs] must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To establish an injury-in-fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme

3

Court has held that when a party has "set forth no specific facts demonstrating" the alleged injury, such allegations "are necessarily conjectural." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412, 420 (2013).

As discussed above, Plaintiffs allege that they have been injured in three distinct ways. First, they allege that the products at issue "are of lower quality, softness, comfort, durability, and longevity than they otherwise would [be] if they were the represented thread count and quality as stated on the labeling and price tags." (*Id.* ¶ 75.) Second, they claim that they "paid more for bedding and linen products, which Defendants represented had inflated thread counts." (*Id.* ¶ 90.) Third, and finally, they contend that Defendants misled and deceived them by labeling the sheets in a manner that was inconsistent with a thread-counting method endorsed by the American Society for Testing and Materials ("ASTM"). (*Id.* ¶ 74.)

    A.    *Sheet Quality*

With regards to the alleged lower quality, softness, and comfort of the sheets in question, Plaintiffs offer only conclusory statements that their sheets were inferior when compared to other products and fail to set forth any information that would allow the Court to assess whether such claims are plausible. They have not provided nor even alluded to any standard with which to evaluate whether a sheet is of lower quality or whether it is softer or more comfortable to the consumer. They do not even attempt to compare their purchases with any other sheets to demonstrate that one is softer or more comfortable than the other as a result of its higher number of threads. The same is true with respect to durability and longevity. Plaintiffs fail to allege that the sheets in question have deteriorated in any way, and

4

they do not provide any information as to what length of time the sheets in question would be expected to serve their purpose in order to be appropriately long-lasting.

B. *Sheet Cost*

With regards to paying a higher price for their sheets, Plaintiffs fail to allege any facts beyond the blanket assertion that, given the thread count, they should have paid less for these products.[1] They decline to compare, for instance, the price they paid to the prices of any other queen-sized sheet set of any thread count. There are therefore no facts in the entire Complaint showing that the prices they paid were higher than the price of any comparable product.

Indeed, the only information before the Court with regards to pricing is a graph showing an "informal survey" of "cotton *king*-size bedding sets" which plots the price of sheet sets at five retailers—Bed Bath & Beyond, Target, Wal-Mart, Macy's, and T.J. Maxx—according to their advertised thread count. (*Id.* ¶ 57 (emphasis added).) Not only does this graph fail to provide any information for queen-sized sheets, likewise fails to show the price of any bed sheets with thread counts over 500 for the retailer in question, T.J. Maxx. (*Id.*) It additionally bears mention that the sheets at issue were purchased for equal to or less than the price of the least expensive sheet set displayed for any retailer at any thread count, including those with fewer threads than the alleged "true thread count" of the sheets at issue. (*See id.* ¶¶ 34, 38, 57.)

This graph also tends to show that thread count is not nearly as indicative of market value as Plaintiffs would have the Court believe. For instance, the price of a sheet set with a

---

[1] Plaintiff Adam states that she paid $29.99 plus tax for a "700 Thread Count" queen-sized sheet set, and Plaintiff Foley states that she paid $39.99 plus tax for a six-piece queen-sized sheet set labeled as having an "800 Thread Count." (ECF No. 1 ¶¶ 32–38.)

5

thread count of 300 at Macy's is more expensive than every other sheet set sold by any other retailer including some with thread counts of up to 1000. (*Id.* ¶ 57.) Within individual retailers, prices also do not increase uniformly as thread counts rise, but rather fluctuate considerably. The data for Macy's is particularly illustrative of this effect. Of the twelve sheet sets Plaintiffs have graphed to display the price and thread count of Macy's products, over half cost less than at least one sheet set with a lower thread count. (*See id.*) This shows that an individual consumer may just as easily spend less by *increasing* the thread count of their sheets as they would by decreasing the count.

C. *Product Labeling*

Finally, Plaintiffs argue that Defendants mislabeled their sheets with "improperly inflated thread counts." (*Id.* ¶ 2.) More specifically, they contend that the thread counts Defendants displayed on their products were not accurate according to the ASTM method, which they allege is "both the industry standard" and the only method compliant with Federal Trade Commission ("FTC") guidelines. (*Id.* ¶¶ 63, 66, 88.) Labeling in this way, Plaintiffs contend, is both "deceptive and misleading." (*Id.* ¶ 88.)

Notably, Plaintiffs do not allege that Defendants have stated that they were using the ASTM method for counting threads when they labeled their products. Therefore, it appears Plaintiffs are arguing that a sheet manufacturer or distributor may only use the ASTM method to count threads and label their products if they are to be in compliance with the law. To demonstrate that such mandatory guidelines exist, Plaintiffs first point to correspondence between two industry associations and the FTC. (*See id.* ¶¶ 67–73.) These letters, however, do not support such a finding.

6

The first letter, dated January 2002, is from Carlos Moore, the Executive Vice President of the American Textile Manufacturers Institute. (*Id.* ¶ 70–71; *see also* ECF No. 1-6.) Mr. Moore claims that some companies in the industry are achieving what he calls "extremely high" thread counts "by counting yarns within a ply as individual yarns." (*Id.* ¶ 71 (quoting ECF No. 1-6 at 2).) He further states that his association "believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public," and he suggests that the ASTM standard should be used instead. (*Id.* (quoting ECF No. 1-6 at 2).) He further requests a staff opinion from the FTC on this question. (ECF No. 1-6 at 3.)

In its reply two months later, the FTC does not attempt to identify any standard in the industry, but rather states that any thread count, in order not to be deceptive, "must be supported by a 'reasonable basis.'" (ECF No. 1-7 at 3.) In determining what such a basis would be, the FTC writes that it would "consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, *or other widely accepted industry practices* that apply to the matter." (*Id.* (emphasis added).) The FTC notes that it had previously endorsed a single ASTM test regarding the labeling of wool in 1994, but it does not make any judgment as to whether Mr. Moore's suggested standard for counting threads is appropriate. (*See id.* at 2–3.) It also expressly states that the question the letter presented was "not appropriate for issuance of a staff advisory opinion." (*Id.* at 2.)

Plaintiffs next provide a second letter written by the FTC dated August 2005 that appears to be written in response to a subsequent request for an opinion letter on this issue.

7

(*See* ECF No. 1-5.)  Here, the FTC reiterates much of its 2002 letter verbatim.  (*Compare* ECF No. 1-5, *with* ECF No. 1-7.)  However, Plaintiffs attempt to distinguish this correspondence by pointing out that, in this letter, the FTC also writes that "consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn."  (ECF No. 1 ¶ 69 (quoting ECF No. 1-5 at 3).)  Yet Plaintiffs neglect to point out that the FTC starts this sentence by writing that it is basing such a conclusion entirely on "the information you have provided about standard industry practices" and has not conducted its own investigation or a comprehensive review of the matter.  (*See* ECF No. 1-5 at 3.)  Further, the Associate Director for Enforcement who composed the letter was also clear that, in accordance with policy, he was providing merely "a staff opinion [that] has not been reviewed or approved by the Commission or any individual Commissioner, and is given without prejudice to the right of the Commission later to rescind the advice."  (*Id.*)

It is unclear, therefore, how either letter could support an assertion that the ASTM thread-counting method is the only lawful method available to Defendants.  This correspondence merely shows that two associations had once lobbied for the ASTM method to be the industry standard, and the FTC acknowledged that it could potentially be one of many reasonable bases for evaluating thread count.

Plaintiffs next urge the Court to take into consideration a set of letters issued by the Texas Department of Agriculture ("TDA") that states it has found, based on the ASTM method, that sheets produced by AQ Textiles have thread counts lower than advertised.  (ECF No. 1 ¶¶ 83–86.)  Yet this letter merely asserts that "the distributor and manufacturer may

8

have engaged in deceptive acts and practices within the State of Texas" and requests that the Texas Attorney General, the Texas Consumer Protection Division, and the FTC "investigate the matters stated herein." (ECF No. 1-2 at 3.) It does not, for instance, state that Texas had adopted the ASTM method, nor does it point to any statute or government guideline that defines how a manufacturer should count threads.

Considering whether a clear government mandate exists is appropriate given that such guidelines do exist for product labels in other markets. For instance, a federal court in Massachusetts, in considering almond milk labeling, denied a motion to dismiss a claim which alleged that a defendant had inaccurately labeled its product as "all natural." *Vass v. Blue Diamond Growers*, Civ. Action No. 14-13610-IT, 2015 WL 9901715, at *1. In that case, the FDA had provided an "informal policy" through a federal regulation for using the term "natural" to label or advertise products, and Massachusetts had also established a definition in its own regulations that was binding on the industry. *Id.* at *5 (citing 56 Fed. Reg. 60421-01, 60466; 105 MASS. CODE REGS. § 520.116(A)(2), (C)(2)).

In sum, the two letters from the FTC in 2002 and 2005 simply acknowledging without adopting the ASTM method—even when combined with a letter from a Texas state agency proposing an investigation into non-ASTM thread counts—are hardly sufficient evidence to show that Defendants are bound by law to use Plaintiffs' preferred thread-counting method. Further, there is undisputed evidence before the Court that sheet manufacturers and distributors have employed alternative methods for counting sheets at least as far back as 2006. Plaintiffs cite an online article that purports to show that consumers "rely on thread count as the gauge for the quality of their bedding and linen products." (ECF No. 1 ¶ 55.) Yet the

article also quotes one manufacturer as saying that "U.S. Customs requires importers to count 2-plies as two threads for tax purposes." *Are Shoppers Short-Sheeted by Thread Counts*, ABC News, (Jan. 6, 2006, 7:01 AM), https://abcnews.go.com/GMA/story?id=125380&page=1. While the Court draws no conclusion as to whether the U.S. Customs method is more accurate than the ASTM or more preferable in any way, it observes that this is the only standard presented in briefing by either party which is based on a government mandate. *Id.*

The Court therefore concludes that, while some manufacturers have lobbied for the ASTM method, Plaintiffs have provided no evidence that this method is either required by statute or regulation or is even the current dominant standard in the industry. Accordingly, it declines to credit Plaintiffs' conclusory statements that using a different method is a deceptive practice.

In sum, Plaintiffs have not provided any facts to support a showing that their sheets are inferior, are priced higher than any comparable sheet set, or that the sheets in question are deceptively labeled. Supreme Court precedent bars the type of speculation and conjecture one must undertake to reach Plaintiffs' conclusion that they have nevertheless been injured, and therefore the Court declines to participate in such an exercise. Instead, the Court finds that Plaintiffs have failed to plausibly allege that they have suffered an injury-in-fact and thus Plaintiffs have no standing to bring this action.

Based on the above, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Plaintiffs' Amended Complaint, (ECF No. 1), is DISMISSED for LACK OF STANDING under Article III, § 2 of the U.S. Constitution.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Amended Complaint under 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, (ECF No. 9), is DENIED as MOOT, and the Complaint is DISMISSED.

IT IS FURTHER ORDERED that this action is DISMISSED, and the Clerk's office shall terminate the case.

This, the 6th day of August 2021.

/s/ Loretta C. Biggs
United States District Judge